**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER ASIS, FOWIZYYAH GOINGS, JACKIE RAY, JOSEPH TOTTEN and STEPHANIE VARGASON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSITY OF ROCHESTER, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ROCHESTER, THE RETIREMENT PLAN COMMITTEE OF THE UNIVERSITY OF ROCHESTER RETIREMENT PROGRAM, and JOHN DOES 1-20,<br><br>Defendants. | **CIVIL ACTION NO.: 6:25-cv-06365-MAV** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. FACTS ..... 4

A. The Parties ..... 4

B. The Prohibited Transactions ..... 5

C. Plaintiffs Were Injured By Paying Excessive RKA Fees ..... 5

III. ARGUMENT ..... 6

A. Legal Standard ..... 6

1. Rule 12(b)(1) ..... 6

2. Rule 12(b)(6) ..... 8

B. The Prior Complaint is Irrelevant ..... 11

C. Binding Precedent Forecloses Defendants' Entire MTD ..... 11

D. Plaintiffs Have Standing ..... 14

1. The fee injury is sufficiently alleged at this juncture ..... 17

2. The services in relation to fees are sufficiently alleged at this juncture ..... 18

E. Plaintiffs Adequately State a Claim for Relief ..... 21

1. The elements of a prohibited transaction claim are satisfied ..... 21

2. The § 1108(b)(2)(A) exemption is not in play ..... 22

F. All Defendants Are Liable ..... 24

IV. CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aetna Life Ins. Co. v. Fast Lab Techs., LLC*,
No. 24-CV-2057, 2025 WL 2463706 (S.D.N.Y. Aug. 27, 2025) ....24

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*,
99 F.4th 928 (7th Cir. 2024) ....10

*Bekker v. Neuberger Berman Grp. LLC*,
No. 16-CV-6123, 2018 WL 4636841 (S.D.N.Y. Sept. 27, 2018) ....12, 13

*Boyette v. Montefiore Med. Ctr.,* 2025 WL 48108 (2d Cir. Jan. 8, 2025) ....15

*Braden v. Wal-Mart Stores, Inc.,*
588 F.3d 585 (8th Cir. 2009) ....*Passim*

*Busha v. S.C. Dep't of Mental Health*,
No. 18-CV-2337, 2019 WL 653969 (D.S.C. Jan. 28, 2019) ....23

*Carlisle v. Bd. of Trs. of Am. Fed'n of New York State Teamsters Conf. Pension & Ret. Fund*,
No. 25-CV-511, 2025 WL 3251154 (2d Cir. Nov. 21, 2025) ....13, 15

*Collins v. Ne. Grocery, Inc.*,
149 F.4th 163 (2d Cir. 2025) ("*Collins I*") ....*Passim*

*Collins v. Ne. Grocery, Inc.*,
No. 24-CV-2339, 2025 WL 2383710 (2d Cir. Aug. 18, 2025) ("*Collins II*") ....*Passim*

*In re Crysen/Montenay Energy Co*.,
226 F.3d 160 (2d Cir. 2000) ....11

*Cunningham v. Cornell Univ.*,
604 U.S. 693 (2025) ....*Passim*

*Doherty v. Bristol-Myers Squibb Co*.,
No. 24-CV-06628, 2025 WL 2774406 (S.D.N.Y. Sept. 29, 2025) ....7, 12

*Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y*.,
316 F.3d 357 (2d Cir. 2003) ("*FHHC*") ....8, 17, 19

*Fed. Trade Comm'n v. Int'l Markets Live, Inc.*,
No. 25-CV-00760, 2025 WL 3033996 (D. Nev. Oct. 29, 2025) ....4

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) .......... 9, 14, 15

*Fleming v. Kellogg Co.*,
No. 1:22-CV-0593 (W.D. Mich., Dec. 8, 2025) .......... 22

*Fulani v. Bentsen*,
35 F.3d 49 (2d Cir.1994) .......... 8

*Garthwait v. Eversource Energy Co.*,
No. 20-CV-00902, 2021 WL 4441939 (D. Conn. Sept. 28, 2021) .......... 12

*Gonzalez v. Northwell Health, Inc.*,
632 F. Supp. 3d 148 (E.D.N.Y. 2022) .......... 8, 13

*Hill v. Delaware N. Companies Sportservice, Inc.*,
No. 11-CV-753, 2012 WL 2405233 (W.D.N.Y. June 25, 2012) .......... 23

*Hughes v. Nw. Univ.*,
63 F.4th 615 (7th Cir. 2023) .......... 9, 15, 20

*Humphries v. Mitsubishi Chem. Am., Inc.*,
No. 23-CV-06214, 2025 WL 2402281 (S.D.N.Y. Aug. 19, 2025) .......... *Passim*

*John v. Whole Foods Mkt. Grp., Inc.*,
858 F.3d 732 (2d Cir. 2017) .......... *Passim*

*Johnson v. PNC Fin. Servs. Grp., Inc.*,
No. 20-CV-01493, 2021 WL 3417843 (W.D. Pa. Aug. 3, 2021) .......... 20

*Khan v. Bd. of Directors of Pentegra Defined Contribution Plan*,
No. 20-CV-07561, 2022 WL 861640 (S.D.N.Y. Mar. 23, 2022) .......... 7, 12, 14

*Kohari v. MetLife Grp., Inc.*,
No. 21-CV- 6146, 2022 WL 3029328 (S.D.N.Y. Aug. 1, 2022) .......... 24

*Kong v. Trader Joe's Co.*,
No. 20-cv-56415, 2022 WL 1125667 (9th Cir. Apr. 15, 2022) .......... 15

*Lockheed Corp. v. Spink*,
517 U.S. 882 (1996) .......... 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 7

*MacTaggert on Behalf of Extreme Eng'g Sols., Inc. Emp. Stock Ownership Plan v. Professional Fiduciary Servs., LLC*,
No. 22-CV-371, 2025 WL 1726143 (W.D. Wis. June 20, 2025) ....16, 17

*Markel Am. Ins. Co. v. Mr. Demolition, Inc.*,
717 F. Supp. 3d 238 (E.D.N.Y. 2024) ....23, 24

*Mator v. Wesco Distribution, Inc.*,
102 F.4th 172 (3d Cir. 2024) ....5, 15, 18, 19

*McKenna v. Wright,*
386 F.3d 432 (2d Cir.2004) ....22

*Montesa v. Schwartz*,
836 F.3d 176 (2d Cir. 2016) ....8

*Moore v. Humana, Inc.*,
No. 21-CV-232, 2022 WL 20766504 (W.D. Ky. Dec. 2, 2022) ....20

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998) ....24

*Parmer v. Land O'Lakes, Inc.*,
518 F. Supp. 3d 1293 (D. Minn. 2021) ....18

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
712 F.3d 705 (2d Cir. 2013) ("*PBGC*") ....9, 16, 20

*Ramseur v. Lifepoint Health, Inc.*,
No. 24-CV-00994, 2025 WL 2619151 (M.D. Tenn. Sept. 10, 2025) ....19

*Rose v. Guardian Life Ins. Co. of Am.*,
No. 25-CV-03866, 2025 WL 2972236 (D.S.C. Oct. 21, 2025) ....23

*Sacerdote v. New York Univ.*,
9 F.4th 95 (2d Cir. 2021) ....*Passim*

*Seidner v. Kimberly-Clark Corp.*,
No. 21-CV-867, 2023 WL 2728714 (N.D. Tex. Mar. 30, 2023) ....8, 14, 19

*Singh v. Deloitte LLP*,
123 F.4th 88 (2d Cir. 2024) ....15, 18

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....7

*Supervalu, Inc. v. United Food & Com. Workers Unions & Emps. Midwest Pension Fund*,
155 F.4th 913 (7th Cir. 2025) ....................................................................................................4

*United States v. Space Hunters, Inc.*, 22
429 F.3d 416 (2d Cir. 2005)........................................................................................................

*Walter v. Kerry Inc*,
No. 21-CV-0539, 2022 WL 1720095 (E.D. Wis. May 27, 2022) ...............................................20

*Zimmerman v. Cedars-Sinai Med. Ctr.*,
No. 23-CV-01124, 2024 WL 1135773 (C.D. Cal. Feb. 18, 2024) ..........................................8, 14

**STATUTES**

29 U.S.C. §1106(a)(1)(C) and (D) ...........................................................................................15

29 U.S.C. §1108(b)(2)...................................................................................................................15

29 U.S.C. §1108(b)(2)(A) .......................................................................................................22, 23

FED. R. CIV. P. 12(b)(1) ..........................................................................................................6, 16

FED. R. CIV. P. 12(b)(6) .................................................................................................. 8, 9, 16, 23

**Other Sources**

Employee Retirement Income Security Act of 1974 ("ERISA") ........................................*Passim*

Christopher Asis, Fowizyyah Goings, Jackie Ray, Jospeh Totten, and Stephanie Vargason, ("Plaintiffs"), respectfully submit this Opposition to Defendants' Motion to Dismiss ("MTD").[1]

## I. INTRODUCTION

"Congress enacted ERISA to 'protect ... the interests of participants in employee benefit plans and their beneficiaries'" "by 'establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.'" *Cunningham v. Cornell Univ.*, 604 U.S. 693, 696 (2025) (citations omitted). As the Supreme Court and Second Circuit recently affirmed, ERISA's prohibited transaction provision, "Section 1106[,] 'supplements the fiduciary's general duty of loyalty to the plan's beneficiaries ... by categorically barring certain transactions deemed 'likely to injure the [] plan.'" *Id.*, at 697 (citation omitted); *see also Collins v. Ne. Grocery, Inc.*, No. 24-CV-2339, 2025 WL 2383710, at *4 (2d Cir. Aug. 18, 2025) ("*Collins II*") (same).

Plaintiffs here are protecting their rights, and the rights of their fellow participants in the University of Rochester Retirement Program (the "Plan"), by bringing a prohibited transaction claim involving the same type of injurious prohibited transaction, with the same theory of Article III injury, upheld by the Supreme Court in *Cunningham* and Second Circuit in *Collins II*. Specifically, Defendants, as the Plan's fiduciaries, caused the Plan to enter an arrangement with Teachers Insurance and Annuity Association ("TIAA"), a party in interest, under which TIAA received millions of dollars in exchange for the Plan's recordkeeping and administrative ("RKA") services. *See* Dkt. No. 12, Amended Complaint ("AC"), ¶ 11. Defendants' conduct was especially

[1] "Defendants" collectively refers to the University of Rochester ("Rochester"), the Board of Trustees of Rochester (the "Board") and the Retirement Plan Committee of the University of Rochester Retirement Program ("Committee"). ERISA refers to the Employee Retirement Income Security Act of 1974.

flagrant given that TIAA received additional income from the Plan's investments. *Id*. This arrangement with TIAA is a prohibited transaction because it "constitutes a 'direct or indirect ... furnishing of […] services […] between the [P]lan and a party in interest.'" *Cunningham*, 604 U.S. at 697. Although the Supreme Court has held that plaintiffs need only allege these facts and "no more, no less[,]" Plaintiffs have surpassed this pleading threshold by alleging that the RKA fees were excessive, therein causing an Article III injury. *Id.*, 604 U.S. at 709.

*Collins II* and *Cunningham* both upheld prohibited transaction claims in cases involving the same asset based, or revenue sharing, fee structure as here. Those prohibited transaction claims were sufficient and untainted by the fact those plaintiffs' excessive fee comparisons did not pass the plausibility threshold for fiduciary breach claims. In *Collins I*, the Second Circuit held that the merits of an excessive fee claim have a higher standard than alleging an Article III injury from excessive fees. *See Collins v. Ne. Grocery, Inc.*, 149 F.4th 163, 172 (2d Cir. 2025) ("*Collins I*"). The entire MTD defies recent, binding Supreme Court and Second Circuit precedent, as well as conflating different pleading requirements for different sections of ERISA and Article III, and raising merit-based disputes that cannot be resolved at this stage.

***Foremost***, the exemption under § 1108(b)(2)(A), a separate section of ERISA, for "[c]ontracting or making reasonable arrangements with a party in interest for […] services necessary for the […] operation of the plan, if no more than reasonable compensation is paid" is an "affirmative defense[]," so it is "fiduciaries who bear the burden of pleading and proving that a § 1108 exemption applies." *Cunningham*, 604 U.S. at 695-96. That Plaintiffs' theory of Article III standing involves excessive fees does not implicate this exemption, nor switch the pleading burden to Plaintiffs to disprove Defendants' potential affirmative defense.

***Second***, Plaintiffs' fee allegations do not raise the Article III "injury-in-fact requirement" above its' "'low threshold,'" where "overpaying for a product" irrefutably "constitute[s] a particularized and concrete injury in fact" requiring only "general" allegations that are accepted in "plaintiff's favor." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736-37 (2d Cir. 2017). Defendants' futile attempt to dismiss Plaintiffs' well-pled prohibited transaction claim under an Article III theory relies on fact disputes that prematurely go to the merits of Plaintiffs' theory. Courts in this Circuit and nationwide have repeatedly held that overpayment of plan fees establishes Article III standing, and that disputes over benchmarks, service codes, or reasonableness do not belong in a jurisdictional inquiry.

***Third***, Defendants fatally aver that because certain recordkeeping services are necessary, and revenue sharing fee structures are not entirely illegal, their prohibited transactions cannot cause injuries. Defendants improperly isolate these arguments from Plaintiffs' excessive fee allegations and ignore that the Second Circuit (and others) instructs that revenue sharing can lead to excessive fees. *See Sacerdote v. New York Univ*., 9 F.4th 95, 111-12 (2d Cir. 2021).

***Fourth***, "because § 1106(a), by its terms, sets out *per se* prohibitions, it would make little sense to put the onus on plaintiffs to plead and disprove any potentially relevant separate § 1108 exemptions[,]" which would "only heighten[] the fairness concern" for plaintiffs, because requiring plaintiffs to prove that the fees were excessive "would require plaintiffs to plead and dispute" an exemption that "turn[s] on facts one would expect to be in the fiduciary's possession." *Cunningham*, 604 U.S. at 706. This principle reflects ERISA's participant-focused protections, as well as how an affirmative defense cannot be implicated and apparent from the face of an ERISA complaint. Simply that Plaintiffs' theory of injury will be factually challenged, *after discovery*, does not invite a factual challenge regarding Defendants' affirmative defense *before discovery*.

***Fifth***, Plaintiffs' claims are clearly not meritless, as they exceed the pleading standards set forth in *Cunningham*. However, it is worth noting that Defendants materially misrepresent that the Supreme Court was concerned for ERISA defendants. In *Cunningham*, "a party encouraged the Court to avoid an interpretation of ERISA that would cause 'an avalanche of meritless litigation' that could 'harm the administration of plans'" but the unanimous Supreme "Court rejected that approach." *Supervalu, Inc. v. United Food & Com. Workers Unions & Emps. Midwest Pension Fund*, 155 F.4th 913, 925–26 (7th Cir. 2025) (discussing *Cunningham*, 604 U.S. at 707).

***Lastly***, binding precedent is so clearly in Plaintiffs' favor that Defendants have not produced a <u>single</u> case supporting any of their positions. Defendants' *ad hominem* attacks and nefarious assumptions about the fact that Plaintiffs make the unremarkable decision to amend their complaint (while keeping the same comparisons and Article III allegations) "evokes the adage: 'if the facts are against you, argue the law. If the law is against you, argue the facts. If the law and the facts are against you, pound the table and yell.'" *Fed. Trade Comm'n v. Int'l Markets Live, Inc.*, No. 25-CV-00760, 2025 WL 3033996, at *1 (D. Nev. Oct. 29, 2025).

Plaintiffs have plausibly alleged a *per se* prohibited transaction and a cognizable financial injury. The motion to dismiss should be denied in its entirety.

## II. FACTS

### A. The Parties

Rochester is the sponsor of the Plan and a named fiduciary. Rochester and the Board appointed the Committee to, among other things, administer the Plan. AC, ¶¶ 25-35 (quoting various Plan documents). Rochester enjoys both direct and indirect benefits by providing the Plan to employees, including tax breaks and the ability to retain top talent. *Id.*, ¶¶ 48-51.

Plaintiffs were employees of Rochester and Plan participants who paid excessive RKA fees. *Id.*, ¶¶ 18-23. As is common in ERISA cases, Plaintiffs do not have actual knowledge of all material facts necessary to make out their claims in detail, as this information is solely in Defendants' possession. *Id.*, ¶ 24.

**B. The Prohibited Transactions**

TIAA was a party-in-interest to the Plan as it was receiving compensation for RKA services, as well as indirect compensation from the Plan in the form of revenue share being paid to TIAA from TIAA funds in the Plan. *Id.*, ¶ 54. "Under the revenue-sharing model, a fund pays the recordkeeper a set portion of the fund's expense ratio." *Sacerdote*, 9 F.4th at 103.

The Plan is required to fill out the annual "Form 5500—a joint creation of the IRS, the Department of Labor, and the Pension Benefit Guaranty Corporation." *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 181 (3d Cir. 2024). The Notes to the Financial Statements attached to the Auditor's Report in the Form 5500s filed during the Class Period explicitly state that TIAA was a party-in-interest, and that: "transactions between TIAA, CREF, TIAA, FSB, and the Plan qualify as party-in-interest transactions. Additionally, notes receivable from participants and plan loans qualify as party-in-interest transactions." AC, ¶ 55 (quoting 2021 Form 5500, Auditor's Report, Notes to Financial Statements at 11). Defendants submit the 2022 Form 5500 which states the same, and shows that the Plan Sponsor and Plan Administrator verified that the information was "true, correct, and complete." Dkt. No. 16-2, at p. 1, Auditor's Report, Notes to Financial Statements at 7.

**C. Plaintiffs Were Injured By Paying Excessive RKA Fees**

Plaintiffs' theory of Article III injury is that "[t]he Plan should have been able to obtain per participant recordkeeping fees of no more than $22 per participant, and likely even less. This fee

is consistent with the average recordkeeping fees paid by similar plans in the country" as well as other factors. *Id.*, ¶ 72. Given the Plan's extraordinarily large size in terms of participants and assets under management, repeat business with TIAA, and industry-wide trends toward declining RKA fees, Defendants could have obtained comparable or superior services at significantly lower per-participant rates. *See* AC, ¶¶ 6-11, 73-74. Plaintiffs use Form 5500s' specific RKA service codes for the Plan and provide over 20 examples of "Comparator Plans" paying less for the same or more services throughout the Class Period, alongside allegations contextualizing the nature of RKA services. AC, ¶¶ 67-68.

Plans with large numbers of participants benefit from economies of scale because large, fixed costs are allocated over a larger participant base, and both essential and ad hoc services are provided by all recordkeepers. *Id.*, ¶¶ 56-64. Plaintiffs support their allegations that pricing is driven by economies of scale with a DOL study and industry sources. *Id.*, ¶¶ 61, 65, 70. Also, because recordkeeping costs are not affected by account size, prudent fiduciaries of defined contribution plans negotiate recordkeeping fees as a fixed dollar amount rather than as a percentage of assets. *Id.*, ¶ 65 (citing Mercer Best Practices at 3). Crucially, in a revenue sharing fee structure, "as plan assets grow, the recordkeeping compensation increases without any change in the recordkeeping services, leading to unreasonable fees." *Id.*, ¶ 65. The AC details how there are "essential recordkeeping services" for all plans, but does not state that all services are presumed essential simply because they pertain to a recordkeeping fee, nor that a fee is presumed reasonable simply because the service is essential. *Id.*, ¶¶ 57-60.

## III. ARGUMENT

### A. Legal Standard

#### 1. Rule 12(b)(1)

"Article III standing requires a concrete injury even in the context of a[n] [ERISA] statutory violation." *Cunningham*, 604 U.S. at 708 (citations omitted). ERISA's standing threshold is the familiar standard set forth in *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). *See Cunningham*, 604 U.S. at 708. As the Second Circuit has explained, standing requires that "a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *John*, 858 F.3d at 736 (quoting *Spokeo*, 578 U.S. at 338). Critically, "[e]ach element of standing 'must be supported ... with the manner and degree of evidence required at the successive stages of the litigation,' and at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The plaintiff "bears no evidentiary burden at the pleading stage." *Id*.

The "injury-in-fact requirement" is "'a low threshold,'" and "no one disputes that overpaying for a product results in a financial loss constituting a particularized and concrete injury in fact." *Id*., (citation omitted); *see also Doherty v. Bristol-Myers Squibb Co*., No. 24-CV-06628, 2025 WL 2774406, at *9 (S.D.N.Y. Sept. 29, 2025) ("Beneficiaries who will rely on their retirement benefits to support them through their senior years of course have a strong interest in [] the *amount*" they will have available, and therefore, "Plaintiffs doubtlessly have a 'concrete stake' in this [prohibited transaction] dispute."); *Khan v. Bd. of Directors of Pentegra Defined Contribution Plan*, No. 20-CV-07561, 2022 WL 861640, at *9 (S.D.N.Y. Mar. 23, 2022) ("while 'reasonable' payments for necessary services qualify for an exemption as Defendants argue, a plan is 'entitled to recover' any excess above a reasonable fee."). It is erroneous to "shun[] the drawing of inferences in favor of a plaintiff's standing at the pleading stage." *John*, 858 F.3d at 737.

It is well settled that "[t]o the degree that defendants challenge the factual underpinnings of the allegations made by plaintiffs in support of their standing to bring suit, the argument is premature." *Fair Hous. in Huntington Comm. Inc. v. Town of Huntington, N.Y.*, 316 F.3d 357, 361–62 (2d Cir. 2003) ("*FHHC*") ("adequacy of proof of plaintiffs' standing remained an issue for trial"); *see also Montesa v. Schwartz*, 836 F.3d 176, 195 (2d Cir. 2016) (quoting *Fulani v. Bentsen*, 35 F.3d 49, 51 (2d Cir.1994)) ("In determining standing, [courts] focus on 'the party seeking to invoke federal jurisdiction, rather than the justiciability of the issue at stake in the litigation.'"). As this case is at the pleadings stage, "whether plaintiffs' injury can be properly attributed to defendants and adequately substantiated remains to be seen, especially given the fact-specific inquiry involved." *Id.*, *at* 363; *see also Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 161 (E.D.N.Y. 2022) (in ERISA cases, the "causal connection element of Article III standing ... does not create an onerous standard ... [and] is a standard lower than that of proximate causation.").

These twin principles, that the standing threshold is low at the pleading stage, and is analyzed separately from the elements underlying the substantive claim, are particularly true in ERISA cases. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 592 (8th Cir. 2009) (Defendants "err[] by conflating the issue of [Plaintiffs'] Article III standing with [the] potential personal causes of action under ERISA."); *Seidner v. Kimberly-Clark Corp.*, No. 21-CV-867, 2023 WL 2728714, at *4 (N.D. Tex. Mar. 30, 2023) (whether the recordkeeping fee comparators are a meaningful "benchmark" is not a standing requirement); *Zimmerman v. Cedars-Sinai Med. Ctr.*, No. 23-CV-01124, 2024 WL 1135773, at *5 (C.D. Cal. Feb. 18, 2024) (same).

**2. Rule 12(b)(6)**

Courts reviewing an ERISA complaint under Rule 12(b)(6) "construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote,* 9 F.4th at 106–07. Courts "are cognizant that 'ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.'" *Id*., at 107 (quoting *Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 718 (2d Cir. 2013) ("*PBGC*")); *see also Cunningham*, 604 U.S. at 706. A Rule 12(b)(6) challenge requires "holistic evaluation of an ERISA complaint" (*id., at* 109 n.49) and a "context-sensitive" approach. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). There is no "defense-friendly standard" in ERISA cases. *Id*., at 412. (unanimously reversing the lower court's dismissal).

In light of these fundamentals, courts "do not require an ERISA plaintiff 'to rule out every possible lawful explanation for the conduct he challenges[,]'" because "[t]o do so 'would invert the principle that the complaint is construed most favorably to the nonmoving party' on a motion to dismiss." *Sacerdote*, 9 F.4th at 108 (quoting *Braden*, 588 F.3d at 597). In *Sacerdote*, this meant that although the Second Circuit had "no quarrel with the general concept of using retail shares to fund revenue sharing" generally, it did not mean "that the use here of all 63 retail shares to achieve that goal was not imprudent" where the plaintiffs alleged the recordkeeping fees were excessive. *Id*., at 111. Further, the lower courts "no-loss finding was unpersuasive" because it was merely a "rejection of plaintiffs' proposed alternative range for recordkeeping fees." *Id*., at 112 ("[t]his finding that plaintiffs had not come up with a credible alternative is distant from saying that the fees charged affirmatively resulted in no loss."); *see also Hughes v. Nw. Univ.*, 63 F.4th 615, 635-36 (7th Cir. 2023) (the legality of revenue sharing is not a complete defense).

The Court in *Cunningham* recently held that*:*

> Section 1106(a)(1)(C) contains three elements. It prohibits fiduciaries from (1) "caus[ing a] plan to engage in a transaction" (2) that the fiduciary "knows or should know ... constitutes a direct or indirect ... furnishing of goods, services, or facilities" (3) "between the plan and a party in interest." Section 1106(a)(1)(C)'s bar is categorical: Any transaction that satisfies its three elements is presumptively unlawful. ***Nothing in that section removes from its categorical bar transactions that were necessary for the plan or involved reasonable compensation***. Accordingly, under § 1106(a)(1)(C), plaintiffs need only plausibly allege each of those elements of a prohibited-transaction claim.

*Cunningham*, 604 U.S. at 700 (emphasis added).

Relevant here is that "Plaintiffs are not required to plead and prove that the myriad § 1108 exemptions pose no barrier to ultimate relief[,]" *id*., at 706, 709, including the one exemption for arrangements that are **both** "necessary" **and** "'reasonable.'" *Id*., at 706.

In *Cunningham*, the lower courts' holdings that the reasonable fee point and comparators were not plausibly alleged for breach of fiduciary duty claims remained undisturbed on appeal. *See id*., at 700 n.3. But even with the implausibly alleged fee comparisons, the prohibited transaction claim survived. The Court in *Cunningham* approved of the holding by the Eighth Circuit in *Braden*. *Id*., 604 U.S. at 700. In *Braden*, the Eighth Circuit upheld a prohibited transaction claim involving recordkeeping fees and revenue sharing, and "reject[ed] [the] appellees' argument that Braden pleaded himself out of court by alleging that" the fees were not justified by "services." *Braden*, 588 F.3d at 601 n.9 ("Construing the complaint in Braden's favor […] the revenue sharing payments far exceeded the value of services actually performed."). A theory of injury from excessive fees does not "put the exemption in play" at the pleading stage, and does not mean that plaintiffs "assume[] the burden of proof on the issue" of reasonableness of fees and services. *Id*., at 601 n.10; *see also Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan*

*v. Buth*, 99 F.4th 928, 948 (7th Cir. 2024) (a plaintiff need "not plead facts showing that the transaction was for more than fair market value" and "has no duty to negate any" exemption)).

**B. The Prior Complaint is Irrelevant**

Perhaps because the elements of a prohibited transaction claim and standing are irrefutably alleged, Defendants repeatedly criticize and make nefarious assumptions about Plaintiffs amending their prior complaint. "It is well settled that an amended pleading ordinarily supersedes the original and renders it of no legal effect." *In re Crysen/Montenay Energy Co*., 226 F.3d 160, 162 (2d Cir. 2000). The Federal Rules of Civil Procedure explicitly contemplate that plaintiffs can and will amended complaints, so it is entirely unremarkable that Plaintiffs have done so here.

Further, it makes no sense to state that Plaintiffs concede any implausibility about the instant AC simply because it *keeps the same allegations* as the original complaint, nor does it make sense to argue that Plaintiffs admit they have no standing for a claim they are bringing and allege a loss for *using the same facts as the original complaint*. *C.f.*, Dkt. No. 1, ¶¶ 18-24, 76 ; AC, ¶¶ 18-24, 68. Defendants' position is especially unfounded since Defendants previously raised the standing issue (*see* Dkt. No 10., at 19), and Plaintiffs still did not change their standing allegations. If anything, maintaining the same facts demonstrates Plaintiffs' *continued* belief in the merits of their comparisons and Article III injury. Because the AC is the only complaint properly under consideration, Plaintiffs will not dwell on Defendants' repeated, baseless arguments pertaining to the original complaint.

**C. Binding Precedent Forecloses Defendants' Entire MTD**

Before *Cunnigham* was issued, the Second Circuit in *Collins I* held that "Plaintiffs satisfactorily allege[] that all Plan participants were harmed by Defendants' " role in causing excessive "compensation of the Plan's recordkeeper." *Collins I*, 149 F.4th at 172; *see also Braden*,

588 F.3d at 592 (alleging excessive RKA fees "satisfied the requirements of Article III because he has alleged actual injury to his own Plan account" that "is fairly traceable to appellees' conduct"); *Garthwait v. Eversource Energy Co.*, No. 20-CV-00902, 2021 WL 4441939, at *7 (D. Conn. Sept. 28, 2021) (excessive fees established standing in ERISA cases); *Bekker v. Neuberger Berman Grp. LLC*, No. 16-CV-6123, 2018 WL 4636841, at *9 (S.D.N.Y. Sept. 27, 2018) (same); *Humphries v. Mitsubishi Chem. Am., Inc*., No. 23-CV-06214, 2025 WL 2402281, at *10 n.5 (S.D.N.Y. Aug. 19, 2025) (same); *Doherty*, 2025 WL 2774406, at *9; *Khan*, 2022 WL 861640, at *9.

The plaintiffs in *Collins I* did not have standing for their "revenue sharing-based *imprudence* claim" because the plaintiff had not "invested in that [investment] fund" particularly alleged to be imprudent. *Collins I*, 149 F.4th at 173-74 (emphasis added). However, in *Collins II*, after *Cunningham*, the Second Circuit vacated *Collins I*'s order affirming the dismissal of the prohibited transaction claim where "the Plan compensated Fidelity directly from plan assets and indirectly from revenue sharing with plan investments" because " generalized allegations regarding how revenue sharing 'typically' works, in context, were sufficient to support an inference that Fidelity was so compensated." *Collins II*, 2025 WL 2383710, at *4. The lack of standing for the "indirect compensation" in the prudence claim did not affect the standing for the prohibited transaction claim which did not hinge on any particularized investment fund.

Importantly, "the district court improperly treated the unreasonableness of the compensation as a pleading requirement" for the prohibited transaction claim, "rather than treating the reasonableness of the compensation for a necessary service as an affirmative defense (as the Court's new *Cunningham* rule now requires.)." *Collins II*, 2025 WL 2383710, at **4–5. In *Collins II*, it was undisturbed on appeal that the breach of fiduciary duty of prudence claim failed because "the complaint did not plausibly allege that the […] fees were excessive relative to the services

rendered." *Id.*, at *3. This is relevant for two critical reasons. First the Second Circuit echoed *Cunningham*, where a fee comparator may be implausible for a prudence claim, but that does not affect the sufficiency of pleading the elements for a prohibited transaction claim in the same complaint. *See id.*; *Cunningham*, 604 U.S. at 700 n.3. To be sure, in *Carlisle*, the Second Circuit reiterated that "a Section 1106 prohibited-transactions claim is still a distinct and separate claim from breach of" fiduciary duties under ERISA. *Carlisle v. Bd. of Trs. of Am. Fed'n of New York State Teamsters Conf. Pension & Ret. Fund*, No. 25-CV-511, 2025 WL 3251154, at *4 n.3 (2d Cir. Nov. 21, 2025).

Second, *Collins I* and other cases demonstrate that a plaintiff sufficiently pleads standing based on excessive fees, even if the statutory elements of that claim are insufficiently pled. *See also Gonzalez*, 632 F. Supp. 3d at 161 ("Plaintiff has standing to bring her imprudent-retention claims against each Challenged Fund" but "fails to allege facts sufficient to raise the plausible inference that defendants violated the duty of prudence" regarding the funds). Defendants' arguments to the contrary have been routinely rejected. In *Bekker*, the defendants "argue[d] that high management fees do not represent a concrete injury unless they are excessive when compared to those charged by similar investment funds." *Bekker*, 2018 WL 4636841, at *5. The court was unpersuaded. Like here, "the reasonableness of the management fees goes to the merits of Plaintiff's ERISA claims rather than the existence of an injury." *Id*. More recently, the court in *Humphries* held that "[a]lthough plaintiffs will have to engage in a fund-specific inquiry to establish that the fiduciary breaches *<u>actually</u>* caused losses to the Plan... this type of inquiry does not preclude a finding of class standing." *Humphries*, 2025 WL 2402281, at *8 (citation omitted). Defendants' standing arguments fail because "Defendants cite no legal authority to support their contention that, for purposes of standing, Plaintiffs must show how they suffered injuries stemming

from the recordkeeping fees paid by the Plan by providing 'a benchmark from which the Court could determine that the fees were excessive for the services provided.'" *Seidner*, 2023 WL 2728714, at *4; *Zimmerman*, 2024 WL 1135773, at *5 (arguments about "benchmarks […] do not address [Plaintiffs'] injury-in-fact and do not go to standing."). In any event, Plaintiffs sufficiently plead the elements of their prohibited transaction claim. Although the Court may end its analysis there, Plaintiffs will address Defendants' arguments in turn.

### D. Plaintiffs Have Standing

Because it is well settled that Plaintiffs' theory of Article III standing is endorsed by the Second Circuit (*see supra*), Defendants "err[] by conflating the issue of [Plaintiffs'] Article III standing with [the] potential personal causes of action under ERISA." *Braden*, 588 F.3d at 592. In particular, Defendants repeatedly, self-servingly rely on only *half* of their premature affirmative defense – the potential necessity of some recordkeeping services, and improperly attack the fee comparisons separately, as well as fatally resting on the overgeneralization that revenue sharing is not *per se* illegal. This strategy fails because reviewing ERISA complaints requires a holistic and context specific analysis. *Sacerdote*, 9 F.4th at 109 n.49; *Fifth Third Bancorp*, 573 U.S. at 425.[2]

First, that Defendants were "merely providing service to the Plan for a fee," "ignores Plaintiffs' allegations, including, *inter alia*, that [the] fees were significantly higher than prevailing market rates." *Khan*, 2022 WL 861640, at *9. Defendants are half right that "prohibited transaction claims under ERISA Section 406(a)(1) 'generally involve uses of plan assets that are potentially harmful to the plan.'" MTD at 8 (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996)). Excessive recordkeeping fees are recognized as one such harm. *See Cunningham*; *Collins II*; *Khan*.

[2] Defendants' position lacks credibility for another reason. As Defendants' own submission of the Plan's 2022 Form 5500 shows, Defendants have already verified that TIAA was a party in interest (*see* Dkt. 16-2; AC ¶ 55); thus, Plaintiffs' allegation is not "conclusory." MTD at 8.

The aforementioned cases disprove Defendants' position that the instant theory "do[es] not allege any cognizable injury" simply because plans need recordkeeping services. MTD at 7. The mere fact that the exemption includes both the necessity and ***reasonableness*** means the inquiry does not begin and end with Defendants' beliefs about the services themselves.

Second, an injury can be sustained from a "revenue sharing" fee structure. MTD at 7. *See* AC, ¶ 65 (unlike a flat fee structure, "as plan assets grow, the recordkeeping compensation increases without any change in the recordkeeping services, leading to unreasonable fees"). The Second Circuit is in good company by holding that revenue sharing can lead to excessive RKA fees under ERISA's context specific approach, although the structure is not categorically banned. *See Sacerdote*, 9 F.4th at 111-12; *Braden*, 588 F.3d at 600 ("revenue sharing payments made by the Plan" did not result in "reasonable compensation for actual services performed" and thus "were prohibited by §§ 1106(a)(1)(C) and (D) and not exempted by § 1108(b)(2)."); *Mator*, 102 F.4th at 179–80 ("Indirect fees, 'if not closely monitored,' may become unreasonable because they 'bear no relation to the actual cost to provide reasonable recordkeeping and administrative services.'"); *Hughes*, 63 F.4th at 635-36; *Kong v. Trader Joe's Co.*, No. 20-cv-56415, 2022 WL 1125667, at *1 (9th Cir. Apr. 15, 2022).

Defendants do not offer any germane cases. Foremost, Defendants egregiously mispresent the applicability that "[i]n *Singh* and *Boyette [v. Montefiore Med. Ctr.,* 2025 WL 48108 (2d Cir. Jan. 8, 2025)], the Second Circuit recognized that a plaintiff challenging a plan's recordkeeping fees must 'plausibly [] allege that challenged fees were excessive relative to the services rendered.'" MTD at 10 (misappropriating *Singh v. Deloitte LLP*, 123 F.4th 88, 93 (2d Cir. 2024)). Defendants' cases are misplaced here, because the Second Circuit narrowly considered the pleading standard for the statutory elements of a claim for breach of fiduciary duty, which

Defendants concede Plaintiffs are no longer bringing. Binding precedent in *Collins I*, *Collins II*, *Carlisle*, and *Cunningham* indisputably preclude the relevance of this standard for prohibited transaction claims as well as the standing analysis. *See* § III.C, *supra*.

Defendants also misrepresent that *Fifth Third Bancorp* and *PBGC* instruct an intertwining of a 12(b)(1) standing and 12(b)(6) merits analysis. Neither case involved prohibited transaction claims or a standing inquiry. The Supreme Court in *Fifth Third Bancorp* rejected the defendants wish for "relief from what they believe are meritless, economically burdensome lawsuits" because the Supreme Court did "not believe that the [proposed] presumption [of prudence] at issue here is an appropriate way to weed out meritless lawsuits" and would in fact "make[] it impossible for a plaintiff to state a duty-of-prudence claim, no matter how meritorious." *Fifth Third Bancorp*, 573 U.S. at 424-26. *PBGC* truly undermines Defendants' position that merits can be reached at this stage, because the Second Circuit warned that "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *PBGC*, 712 F.3d at 718 (citation omitted); *see also Cunningham*, 604 U.S. at 706. However, in *PBGC*, opposite of here, the plaintiff had ample "access to this information" because it was the "the plan administrator." *Id*. at 720. The understanding that plaintiffs lack access to information applies to the standing analysis, because the burden for proving standing "must be supported ... with the manner and degree of evidence required at the successive stages of the litigation." *John*, 858 F.3d at 736; *see also Humphries*, 2025 WL 2402281, at *10 n.5 ("Discovery will confirm, for example, how revenue sharing affected the overall administration of the Plan.").

Defendants even distinguish their only prohibited transaction case for their standing attack for Plaintiffs. In *MacTaggert* there was no standing because the theory was "only that an ESOP transaction occurred" without any theory of injury, including even if "if the employer's stock was

purchased for fair market value." MTD at 7 (quoting *MacTaggert on Behalf of Extreme Eng'g Sols., Inc. Emp. Stock Ownership Plan v. Professional Fiduciary Servs., LLC*, No. 22-CV-371, 2025 WL 1726143, at *6 (W.D. Wis. June 20, 2025)) (emphasis added). Opposite of alleging merely that a transaction occurred, Plaintiffs allege that the RKA fees were *above fair market value*, as the Second Circuit has endorsed. *See John,* 858 F.3d at 736; *Collins I,* 149 F.4th at 172.

**1. The fee injury is sufficiently alleged at this juncture**

Excessive fees, regardless of structure, are sufficient to state an injury under Article III. *See Collins I,* 149 F.4th at 172; *Sacerdote*, 9 F.4th at 112. As this is the pleadings stage, Plaintiffs' standing allegations are accepted as true and all inferences are viewed in Plaintiffs' favor, especially considering Plaintiffs' asymmetrical access to information. *See FHHC.*, 316 F.3d at 363; *Humphries*, 2025 WL 2402281, at ** 8, 10 n.5. Defendants contradict themselves by stating that Plaintiffs' fee allegations are "conclusory" but also have "support" in alleged Comparator Plans. MTD at 10. Defendants again contradict themselves by stating that "Plaintiffs completely ignore the additional fees their comparator plans paid for the recordkeeping" but in the immediately following sentence concede "Plaintiffs are transparent about this—they concede that the Plan and the comparator plans *all* paid additional fees[,]" and admit the Form 5500s do not state the amount of indirect fees. MTD at 11-12. Critically, many of Defendants' positions regarding Plaintiffs' well-pled fee allegations are eradicated by their concession that Plaintiffs' "calculated per-participant 'fees' do not consider any 'indirect compensation" paid by the Plan or any of the comparator plans." MTD at 14. Plaintiffs do not "misstate the Form 5500s" by stating that they reported $0 in indirect compensation, and Defendants do not disagree that $0 is the amount entered. *Id.*, at 11. To the contrary, the AC alleges only the direct fees paid by the Plan and Comparator Plans using the "Total RKA Reported" divided by the number of participants,

using the same method for both the Plan and Comparator Plans. AC, ¶¶ 67-68. Alleging "that either the Plan's 'direct fees alone' or its 'indirect fees alone' were 'unreasonable'" is sufficient, because "[t]he implication is that the Plan overpaid, even if the comparisons are imperfect." *Mator*, 102 F.4th at 181.[3] Like *Mator*, "the Plan was already paying too much in direct fees, so if the defendants had been monitoring properly, 'they would have realized that it was not necessary to allow [the recordkeeper] to collect additional fees [indirectly] through revenue sharing.'" *Id.*, at 182. Nevertheless, Defendants raise a standing challenge which cannot delve into the merits of Plaintiffs' comparisons, especially when Plaintiffs do not have access to this insider information. *See Cunningham*, 604 U.S. at 706; *Parmer v. Land O'Lakes, Inc.*, 518 F. Supp. 3d 1293, 1307-08 (D. Minn. 2021) ("[T]he contract […] to which plaintiffs are not privy - cannot be used to defeat plaintiffs' claim at this stage."); MTD at 12 n. 8 ("The Form 5500 instructions do not require plans to report the amount of any eligible indirection compensation paid to their recordkeepers.").

**2. The services in relation to fees are sufficiently alleged at this juncture**

The Comparator Plans' services retained in relation to the fees are materially similar, with some Comparator Plans obtaining more services. AC, ¶ 68. As Defendants note, some codes are duplicative like how codes 15 and 64 are both for "recordkeeping" and codes 28 and 52 are both for "investment management" so not every plan entered both codes, and some codes are for the type of fee rather than a service, like Code 50. *See* MTD at 11 n.7; *Mator*, 102 F.4th at 186 ("it is unclear why the code 'Direct payment from the plan' exists at all."). For this reason, the exact Comparator Plan service codes need not mirror the Plan. "The different service codes do not undermine [Plaintiffs'] comparisons because they apparently overlap." *Mator*, 102 F.4th at 186.

[3] *C.f., Singh*, 123 F.4th at 92, 97 (finding *Mator's* fee comparisons plausible, but the plaintiffs in *Singh* "compared the Plan's combined direct and indirect costs for recordkeeping with only the direct costs of the comparator plans").

Defendants only take issue with two particular plans, including the Deseret plan which Defendants concede paid less for more services. MTD at 11. While this fact dispute is misplaced at the pleadings stage (*see supra*), the Court may reject some comparisons and still find the AC sufficient. *See Mator*, 102 F.4th at 187 ("If we were to limit comparators to" Defendants' proffered standard, "that would leave four of the eleven comparators" which "does not seem insufficient.").

There are several plans used over several years, but the plans are selected based on comparability of services and size. AC, ¶ 68. Defendants provide no authority that the same plan must be used for every year, which could result in them having inapt service and size comparisons for those years. Thus, "Defendants' motion to dismiss repeatedly oversteps the […] by improperly weighing the allegations, drawing inferences in their own favor, and inviting the Court to consider matters outside the pleadings." *Ramseur v. Lifepoint Health, Inc.*, No. 24-CV-00994, 2025 WL 2619151, at *3 (M.D. Tenn. Sept. 10, 2025) (rejecting similar plan comparison arguments).

Defendants' assumption that some services may not have been part of the recordkeeping fee fails for many of the same reasons as their other attacks, it impermissibly isolates certain allegations and raises merits disputes and alternative explanations that are not properly considered in a standing analysis or prohibited transaction claim. Defendants also submit the Form 5500s showing that these codes were all entered, and verified by the Plan Administrator, that these services were paid for "recordkeeping." *See* Dkt. No., 16-2 at 1, 11; *but see Seidner*, 2023 WL 11981126, at *5 n.4 (arguments contradicting "the documents provided by Plaintiffs showing that [] services are treated as" a specific type of fees "concerns the merits of the case and may be raised by Defendants at the summary-judgment stage."). This highlights the nature of the fact dispute which is inappropriate here. *See FHHC*, 316 F.3d at 363; *Humphries*, 2025 WL 2402281, at *10 n.5. The "investment advisory," and "investment management" codes that Defendants single out

(MTD at 13) are part and parcel of the indirect fees/ revenue sharing allegations intertwined with Plaintiffs' theory, especially for "Plan consulting" which includes advising on the investments tied to revenue sharing, and Defendants entered as a recordkeeping service. AC ¶ 57; *see also Sacerdote*, 9 F.4th at 103. Defendants only offer the implausible excuse that "insurance charges" cannot be tied to recordkeeping fees (despite the Form 5500 saying otherwise). MTD at 13. Defendants' premature alternative excuse is also implausible because they are arguing that the fee tied to that service is (1) necessary, (2) reasonable, and (3) so substantial that if that portion of the fee were removed the RKA fees would be in line with market rates. Defendants' logic does not warrant dismissal because "[a]n equally, if not more, plausible inference would be that the university neglected to keep its recordkeeping fees paid through revenue sharing at a reasonable level." *Hughes*, 63 F.4th at 633; *Sacerdote*, 9 F.4th at 108 (quoting *PBGC*, 712 F.3d at 718) ("such an argument 'goes to the merits and is misplaced at this early stage.'"); *Walter v. Kerry Inc*, No. 21-CV-0539, 2022 WL 1720095, at *3 (E.D. Wis. May 27, 2022) ("In theory, a few overzealous participants could spend lavishly on ad hoc services, thereby increasing the total [RKA] fee disclosed on the Form 5500 […] but the motion to dismiss stage is not the time for weighing competing explanations."). How these codes relate to what Defendants themselves officially filed as "recordkeeping" fees (Dkt. No., 16-2 at 1) remains to be seen in discovery, but it is not relevant now.

Lastly, Defendants fail to explain how it can be assumed, as a matter of law, that "decreasing" fees means that the fees cannot relate to "essential recordkeeping and administrative services[,]" nor does it demonstrate that the fees were not injurious. MTD at 14. This again improperly isolates the fee allegations from the revenue sharing structure allegations, where services are not directly related to fees. *See* AC, ¶ 67; *Sacerdote*, 9 F.4th at 111-12; *Hughes*, 63

F.4th at 635-36. Plus, the lowering of fees is a premature, implausible explanation, particularly when all of the Comparator Plans paid lower fees than the Plan's lowest fee point. *See* AC, ¶ 68; *Moore v. Humana, Inc.*, No. 21-CV-232, 2022 WL 20766504, at *3 (W.D. Ky. Dec. 2, 2022) ("lowering the recordkeeping fee" is merely a fact dispute and not a conclusive evidence); *Johnson v. PNC Fin. Servs. Grp., Inc.*, No. 20-CV-01493, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021) ("a high fee may reflect imprudence even if the fee falls year-over year.").

All this to say, Plaintiffs' comparisons are meaningful, but none of these merits based factual disputes weigh on the Article III analysis, particularly for a prohibited transaction claim. Plaintiffs have met their burden under the low threshold to state that they suffered a cognizable injury from excessive fees as a result of the prohibited transaction that Defendants caused. *See John*, 858 F.3d at 736; *Collins I*, 149 F.4th at 172.

### E. Plaintiffs Adequately State a Claim for Relief

#### 1. The elements of a prohibited transaction claim are satisfied

The elements of a prohibited transaction claim are satisfied under *Cunningham* and ERISA's plain text, requiring the pleading of only "three elements[:]" the fiduciaries caused the "'plan to engage in a transaction'" that was a "'direct or indirect ... furnishing of goods, services , or facilities'" that was "'between the plan and a party in interest.'" *Cunningham*, 604 U.S. at 700 (citation omitted). The standard requires "no more, no less." *Cunningham*, 604 U.S. at 709. Plaintiffs sufficiently allege how the "arrangement with" TIAA for RKA services and "additional income from certain of the Plan's investment securities" fits within these elements. AC, ¶ 11. *Cuningham* explicitly rejected the level of factual specificity, untethered to any of these three elements, that Defendants now advance. To be sure, Plaintiffs allege more than these elements by including the fee comparators, but that does not change the pleading standard or analysis.

Defendants' unpublished, out-of-circuit district court case of *Fleming* does not support their position. The conclusory allegation there *was tied to one of the elements of a prohibited transaction claim*: "how Transamerica fits within the '*party in interest*' definition." *Fleming v. Kellogg Co*., No. 1:22-CV-0593, Slip Op., at 17 (W.D. Mich., Dec. 8, 2025) (Dkt. No. 87). The plaintiffs in *Flemming* did not even allege "the years during which such services were offered." *Id.*, at 12, 16. Again, Defendants do not, and cannot argue, that TIAA was not a party in interest during the Class Period. *See* Dkt. 16-2; AC ¶ 55. The court in *Fleming* held "that it is the defendant-fiduciary's burden to plead and prove that a § 1108 exemption applies[,]" but the exemption was not the issue. *Fleming,* No. 22-CV-0593, Slip Op., at 15 n.6. Defendants have not met their burden of showing that any element of a prohibited transaction claim has not been alleged.

**2. The § 1108(b)(2)(A) exemption is not in play**

It bears repeating, the Supreme Court and Second Circuit have foreclosed Defendants' argument that alleging services and fees implicates the exemption and invites a merits dispute. In order for an affirmative defense to be considered at the pleadings stage, there must be actual "facts supporting the defense" rather than just relating to the defense, and it must "appear[] beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *United States v. Space Hunters, Inc.*, 429 F.3d 416, 426 (2d Cir. 2005); *see also McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir.2004) (same; "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense"). Expressly alleging that the fees were *not* reasonable means there are no "facts supporting" the exemption or that the exemption is undoubtedly satisfied. *See Braden*, 588

F.3d at 601 n.10 (alleging excessive fess does not "put the exemption in play" nor switch the exemptions' "burden of proof" to plaintiffs).

Rather than directly quoting *Cunningham*, Defendants strangely rely on cases that undermine their illegitimate position that their affirmative defense, the § 1108(b)(2)(A) exemption, may be raised on a motion to dismiss "if the defense appears on the face of the complaint." MTD at 15. For instance, in *Hill*, the court actually held that, "[c]ontrary to Defendant's contention […] Plaintiff is *not* required to plead" the affirmative defense, and "instead it is Defendant who bears the burden of pleading and proving this" because "the applicability of this affirmative defense is therefore *not clear from the face of the Amended Complaint, and dismissal pursuant to Rule 12(b)(6) is not warranted*." *Hill v. Delaware N. Companies Sportservice, Inc*., No. 11-CV-753, 2012 WL 2405233, at *2 (W.D.N.Y. June 25, 2012) (emphasis added). It is likewise "not clear" from the AC that the prohibited transaction was for necessary and reasonable services, especially because the AC explicitly alleges that the fees were not reasonable. Similarly, the affirmative defense in *Rose* was the "statute of limitations for breach of fiduciary duty claims[,]" but , the *court did not dismiss* the complaint based on the defendant's affirmative defense arguments because, exactly like here "*[t]his principle only applies, however, if all facts necessary to the affirmative defense clearly appear on the face of the complaint*" which was not the case in *Rose*. *Rose v. Guardian Life Ins. Co. of Am*., No. 25-CV-03866, 2025 WL 2972236, at *2 (D.S.C. Oct. 21, 2025) (quoting *Busha v. S.C. Dep't of Mental Health*, No. 18-CV-2337, 2019 WL 653969, at *2 (D.S.C. Jan. 28, 2019) (also noting that it is a "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint[.]").

Defendants' other cases do not involve exemptions as an affirmative defense either. *Markel* involved "[a] statute of limitations affirmative defense" in "a negligence action" where the

"Plaintiff does not dispute that it is bound by the contract" shortening the statutes of limitations. *Markel Am. Ins. Co. v. Mr. Demolition, Inc.*, 717 F. Supp. 3d 238, 244 (E.D.N.Y. 2024). *Pani* was not an ERISA case and involved the "affirmative defense of official immunity." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). *Aetna Life Ins. Co* was not a prohibited transaction claim, and plaintiff had the "pleading burden as to exhaustion" of administrative remedies, unlike here. *Aetna Life Ins. Co. v. Fast Lab Techs., LLC*, No. 24-CV-2057, 2025 WL 2463706, at *7 (S.D.N.Y. Aug. 27, 2025) (*Aetna* also did not mention *Cunningham*).

Needless to say, this is an ERISA case where Defendants' anticipated affirmative defense is subject to a material fact dispute, and Plaintiffs have not alleged any concession that the elements that Defendants must prove are satisfied. Like Defendants' standing arguments, arguments about the reasonableness and quality of services are premature and have no bearing on the plausibility of Plaintiffs' prohibited transaction claim or sufficiency of Plaintiffs' theory of Article III injury.

**F. All Defendants Are Liable**

Defendants concede that "Rochester's role" included "'appoint[ing] the Committee … to administer the Plan' [AC] ¶ 26, and that it did so 'acting through its Board of Trustees,'" as well as that the "'[t]he Committee has the authority to employ … recordkeepers … and other service providers'" MTD at 17. The prohibited transaction decisions were not "plainly, and solely, within the scope of the Committee's authority" MTD at 17-18. As *Collins I* instructs, "ERISA does not expressly require that plan fiduciaries who appoint other plan fiduciaries monitor those appointed fiduciaries" but the Second Circuit has "nonetheless recognized that" an "appointing fiduciary" must "monitor the appointed fiduciaries." *Collins I*, 149 F.4th at 169; *see also Kohari v. MetLife Grp., Inc.*, No. 21-CV- 6146, 2022 WL 3029328, at *10 (S.D.N.Y. Aug. 1, 2022) (internal citations omitted) ("As fiduciaries, each of these Defendants allegedly has or had a 'responsibility to

monitor the performance of the Committee and its members' and to ensure that they were or are 'complying with the terms of the Plan and ERISA's statutory standards.'"). Defendants do not cite a single case for their proposition that Rochester and the Board are not liable. At the very least, the role and influence of Rochester and the Board are premature factual disputes necessitating discovery. *See Cunningham*, 604 U.S. at 706.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss Plaintiffs' Complaint, or in the alternative grant Plaintiffs leave to amend.

Dated: January 16, 2026

Respectfully submitted,

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh, Esquire
PA Attorney ID #88587
**CAPOZZI ADLER, P.C.**
James A. Maro, Esquire
PA Attorney ID #86420
(*Admitted Pro Hac Vice)*
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com
jamesm@capozziadler.com

Elizabeth A. Cordello, Esquire
New York Bar #4148284
**PULLANO & FARROW**
401 Main Street
East Rochester, NY 14445
Telephone: (585) 730-4773
Facsimile: (888) 971-3736
Email: ecordello@lawpf.com

*Counsel for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 16, 2026, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By: *_/s/ Mark K. Gyandoh_*
Mark K. Gyandoh, Esq.