**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHRISTOPHER ASIS, FOWIZYYAH GOINGS, JACKIE RAY, JOSEPH TOTTEN and STEPHANIE VARGASON, individually and on behalf of others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNIVERSITY OF ROCHESTER, THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ROCHESTER, THE RETIREMENT PLAN COMMITTEE OF THE UNIVERSITY OF ROCHESTER RETIREMENT PROGRAM, and JOHN DOES 1-20,<br><br>*Defendants*. | Civil Action No. 6:25-cv-06365-MAV<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED
COMPLAINT**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

I.    THE AMENDED COMPLAINT FAILS TO STATE A PROHIBITED
      TRANSACTION CLAIM BECAUSE IT FAILS TO ALLEGE A PARTY-IN-
      INTEREST................................................................................................................. 1

II.   THE AMENDED COMPLAINT DOES NOT ESTABLISH ARTICLE III
      STANDING. ............................................................................................................. 4

      1.    Plaintiffs' Complaint Demonstrates the Challenged Services Were
            "Necessary."...................................................................................................... 4

      2.    Plaintiffs' Excessive Fee Allegations Are Too Speculative To Establish
            Injury.................................................................................................................. 4

      3.    Plaintiffs' Authority Does Not Help Them.......................................................... 7

III.  PLAINTIFFS' ALLEGATIONS ESTABLISH DEFENDANTS' SECTION
      408(B)(2) AFFIRMATIVE DEFENSE. ................................................................... 9

CONCLUSION............................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Fast Lab Techs., LLC*,
   2025 WL 2463706 (S.D.N.Y. Aug. 27, 2025) ..............................................................................9

*Boyette v. Montefiore Med. Ctr.*,
   2025 WL 48108 (2d Cir. Jan. 8, 2025) .......................................................................................6

*Carlisle v. Bd. of Trs. of Am. Fed'n of New York State Teamsters Conf. Pension &
   Ret. Fund*,
   2025 WL 3251154 (2d Cir. Nov. 21, 2025) .................................................................................8

*Collins v. Ne. Grocery, Inc.*, ("*Collins I*")
   149 F.4th 163, 173 (2d Cir. 2025) ..............................................................................................7

*Collins v. Ne. Grocery, Inc.*, ("*Collins II*")
   2025 WL 2383710 (2d Cir. Aug. 18, 2025) .................................................................................8

*Cunningham v. Cornell Univ.*,
   604 U.S. 693 (2025) ............................................................................................................1, 4, 8, 9

*D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins.*,
   88 F.4th 602 (5th Cir. 2023) ...................................................................................................1, 4

*Dempsey v. Verizon Commc'ns, Inc.*,
   2026 WL 72197 (S.D.N.Y. Jan. 8, 2026) .................................................................................2, 3

*Fleming v. Kellogg Co.*,
   2025 WL 4053174 (W.D. Mich. Dec. 8, 2025) ........................................................................2, 3

*Garnick v. Wake Forest Univ. Baptist Med. Ctr.*,
   629 F. Supp. 3d 352 (M.D.N.C. 2022) ....................................................................................6, 7

*Gonzalez v. Northwell Health, Inc.*,
   632 F. Supp. 3d 148 (E.D.N.Y. 2022) .........................................................................................8

*Hill v. Delaware N. Cos. Sportservice, Inc.*,
   2012 WL 2405233 (W.D.N.Y. June 25, 2012) ............................................................................9

*Humphries v. Mitsubishi Chem. Am., Inc.*,
   2025 WL 2402281 (S.D.N.Y. Aug. 19, 2025) ..............................................................................8

*John v. Whole Foods Market Group Inc.*,
   858 F.3d 732 (2d Cir. 2017) ........................................................................................................7

*Lalonde v. Mass. Mut. Ins. Co.*,
    728 F. Supp. 3d 141 (D. Mass. 2024) ..................................................................................3

*MacTaggert v. Professional Fiduciary Servs., LLC*,
    2025 WL 1726143 (W.D. Wis. June 20, 2025) ....................................................................7

*Mator v. Wesco Distribution, Inc.*,
    102 F.4th 172 (3d Cir. 2024) ...........................................................................................6, 7

*Patrico v. Voya Fin., Inc.*,
    2018 WL 1319028 (S.D.N.Y. Mar. 13, 2018) .....................................................................3

*Peeler v. Bayada Home Health Care, Inc.*,
    2026 WL 208630 (W.D.N.C. Jan. 27, 2026) ....................................................................5, 9

*Ramos v. Banner Health*,
    1 F.4th 769 (10th Cir. 2021) ...................................................................................1, 2, 3, 5

*Singh v. Deloitte LLP*,
    123 F.4th 88 (2d. Cir. 2024) .............................................................................................6, 8

*Sulyma v. Intel Corp. Inv. Pol'y Comm.*,
    909 F.3d 1069 (9th Cir. 2018), *aff'd*, 589 U.S. 178 (2020) ...............................................3

**Statutes**

29 U.S.C. § 1002(14) .......................................................................................................1, 2

29 U.S.C. § 1106(a) .........................................................................................................1, 4

29 U.S.C. § 1108(b) ............................................................................................................9

**INTRODUCTION**

Plaintiffs' Opposition further confirms their sole remaining claim should be dismissed. *Cunningham* reiterated that an ERISA plaintiff must plausibly allege the elements of a prohibited transaction and must also establish Article III standing by alleging a cognizable injury-in-fact. Plaintiffs' allegations in the Amended Complaint fail to state a prohibited transaction claim— indeed, Plaintiffs fail to even identify the particular transaction which they contend is prohibited. Their allegations moreover are so speculative and contradictory that they fail to establish any injury, let alone one sufficient for Article III standing. Finally, even assuming Plaintiffs had plausibly alleged a prohibited transaction and stated a cognizable injury (they have not), they fail to overcome the clearly applicable prohibited transaction exemption they have incorporated into their allegations. The Amended Complaint should be dismissed with prejudice.

I.    **The Amended Complaint Fails to State A Prohibited Transaction Claim Because It Fails to Allege A Party-in-Interest.**

It is well established that "Plaintiffs bear the initial burden of proving a fiduciary engaged in a prohibited transaction." *Ramos v. Banner Health*, 1 F.4th 769, 786 (10th Cir. 2021); *see also Cunningham v. Cornell Univ.*, 604 U.S. 693, 700 (2025) (plaintiffs must "plausibly allege each of those elements of a prohibited-transaction claim"). Here, Plaintiffs' prohibited transaction claim fails because they do not plausibly allege any transaction between the Plan and a "party in interest." 29 U.S.C. § 1106(a)(1)(C). Specifically, Plaintiffs fail to even identify the specific transaction they contend was prohibited.

ERISA defines a "party in interest" as a "person *providing* services to [the] plan." 29 U.S.C. § 1002(14)(B) (emphasis added). A "party in interest" under Section 1106(a) is "limited to entities that have *already begun providing services* to the plan at issue." *D.L. Markham DDS, MSD, Inc. 401(k) Plan v. Variable Annuity Life Ins.*, 88 F.4th 602, 609 (5th Cir. 2023) (emphasis added);

1

*Ramos*, 1 F.4th at 787 (for a service provider to be a party in interest "some prior relationship must exist between the fiduciary and the service provider").

Plaintiffs assert in conclusory fashion that TIAA was a party in interest because "it was receiving compensation for [recordkeeping and administrative] services" via revenue sharing from TIAA funds in the Plan (ECF No. 12 at ¶ 54; *see also id*. at ¶ 55 (citing the Auditor's Report from the Plan's Form 5500s)). But this allegation does not identify the *transaction* Plaintiffs are challenging. The Amended Complaint simply pleads a legal conclusion that "[d]uring the putative Class Period, Defendants, as the 'fiduciaries' of the Plan … engag[ed] in prohibited transactions[.]" ECF No. 12 at ¶ 12. This is insufficient to state a claim.

In their Opposition, Plaintiffs appear to advance two theories not pled in the Amended Complaint: first, that they are alleging a prohibited transaction *writ large* challenging TIAA's provision of recordkeeping and administrative services (ECF No. 18 at 4) and second, that any payments to TIAA for its services, including through revenue sharing from certain of the Plan's investment securities, were prohibited transactions (ECF No. 18 at 21). Both theories fail.

***First,*** to the extent Plaintiffs challenge TIAA's provision of services to the Plan as one prohibited transaction *writ large*, that claim fails because it is premised on the circular argument that contracting with a vendor to provide services is a prohibited transaction. *See, e.g.*, *Dempsey v. Verizon Commc'ns, Inc.*, 2026 WL 72197, at *12 (S.D.N.Y. Jan. 8, 2026) ("It is circular to suggest that an entity which becomes a party in interest by providing services to the Plan has engaged in a prohibited transaction simply because the Plan has paid for those services."). ERISA defines "party in interest" as those entities *already* "providing services to [the] plan." *Fleming v. Kellogg Co.*, 2025 WL 4053174, at *7 (W.D. Mich. Dec. 8, 2025) (citing 29 U.S.C. § 1002(14)), *appeal filed*, No. 26-1015 (6th Cir. Jan. 6, 2026); *see also, e.g.*, *id.* at *8 ("[A] majority of circuits have held

2

that the collection of a contractually predetermined fixed fee does not constitute a fiduciary act under ERISA."); *Ramos*, 1 F.4th at 787 (affirming dismissal of a prohibited transaction claim, reasoning that the plaintiff's theory "leads to an absurd result: the initial agreement with a service provider would simultaneously transform that provider into a party in interest and make that same transaction prohibited under § 1106"). Plaintiffs do not allege that TIAA was *already* a party in interest at the time the University of Rochester contracted with TIAA to provide recordkeeping and administrative services to the Plan. This is fatal to their claim. *Dempsey*, 2026 WL 72197, at *12 ("Plaintiffs do not allege that State Street provided services to the Plans prior to its retention as an independent fiduciary. Absent such an allegation, Plaintiffs cannot rely on a circular argument that State Street was a party in interest in the transaction where it first provided services to the Plan."); *Patrico v. Voya Fin., Inc.*, 2018 WL 1319028, at *7 (S.D.N.Y. Mar. 13, 2018).

Moreover, to the extent Plaintiffs argue there is one, continuous prohibited transaction, their claim is time-barred. ERISA Section 413(2) provides a three-year statute of limitations from when "the plaintiff has actual knowledge of" an ERISA violation. For a prohibited-transaction claim, "the plaintiff need only be aware that the defendant has engaged in a prohibited transaction" to satisfy this requirement. *Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1075 (9th Cir. 2018), *aff'd*, 589 U.S. 178 (2020); *Lalonde v. Mass. Mut. Ins. Co.*, 728 F. Supp. 3d 141, 151-52 (D. Mass. 2024) (dismissing prohibited transaction claim as time-barred). Plaintiffs allege they participated in the Plan and paid TIAA for its recordkeeping and administrative services to the Plan (ECF No. 12 at ¶¶ 18-22), yet they did not file this lawsuit until 2025.

**Second,** to the extent Plaintiffs contend that the payments made to TIAA through revenue sharing constituted prohibited transactions (ECF No. 18 at 21) that conflicts with clear caselaw establishing that ERISA's prohibited transaction provisions exclude "subsequent payments."

3

*Markham*, 88 F.4th at 612 ("As discussed above, § 1106(a) limits scrutiny to *contracts* involving preexisting relationships in order to prevent favoritism at the expense of plan beneficiaries." (emphasis added)). This exclusion encompasses payments for contracted services. As the Fifth Circuit has explained, if a prohibited "transaction" under ERISA applied to contractual payments:

> plaintiffs could circumvent this limitation to upend contracts that were negotiated at arm's length and, basically, never pay what is owed. The Secretary contends that this interpretation would contradict the purpose of ERISA by allowing unreasonable service contracts to go on without scrutiny. But allowing separate claims for any contractual payment would lead to an influx of litigation at odds with the limitations of § 1106(a) and lead to failing to pay entities that do work.

*Markham*, 88 F.4th at 612. For these reasons, Plaintiffs have not alleged any viable prohibited transaction claim and the Amended Complaint should be dismissed with prejudice.

## II. The Amended Complaint Does Not Establish Article III Standing.

Plaintiffs' prohibited transaction claim and the Amended Complaint should also be dismissed for the additional reason that Plaintiffs lack Article III standing. Plaintiffs' Amended Complaint is exactly the type of "meritless" prohibited transaction claim the Supreme Court warned about when it emphasized that "[d]istrict courts must . . . dismiss suits that allege a prohibited transaction occurred but fail to identify an injury," *Cunningham*, 604 U.S. at 707-08. By voluntarily amending their Complaint, Plaintiffs acknowledged they could not state a plausible fiduciary breach claim with respect to excessive fees, but now try to proceed with a prohibited transaction claim based on the *same* excessive fee allegations. But even assuming Plaintiffs stated a prohibited transaction claim (and they do not), they lack Article III standing and their claim should be dismissed.

### 1. Plaintiffs' Complaint Demonstrates the Challenged Services Were "Necessary."

Plaintiffs admit that the recordkeeping and administrative services TIAA provided to the Plan were "essential" services. *See, e.g.*, ECF No. 12 at ¶¶ 57-58. Each of their proposed

4

comparator plans, moreover, also paid outside vendors for these essential services. *Id*. at 17-20, ¶ 68; *see, e.g.*, *Peeler v. Bayada Home Health Care, Inc.*, 2026 WL 208630, at *13 (W.D.N.C. Jan. 27, 2026) (in the context of a prohibited transaction claim, rejecting the plaintiffs' claim that the challenged services were "unnecessary" because "the very next paragraph of the Amended Complaint provides a table full of examples of 'clients of a similar size with a similar number of funds'" that "*did* contract for advisory services"). No inference of harm can be drawn from such common and essential service arrangements. *Ramos*, 1 F.4th at 787 ("ERISA cannot be used to put an end to run-of-the-mill service agreements, opening plan fiduciaries up to litigation merely because they engaged in an arm's length deal with a service provider . . . Otherwise, a plan participant could force any plan into court for doing nothing more than hiring an outside company to provide recordkeeping and administrative services.").

### 2. *Plaintiffs' Excessive Fee Allegations Are Too Speculative To Establish Injury.*

As Defendants demonstrated in their Motion to Dismiss ("Motion"), Plaintiffs' allegations in the Amended Complaint that they paid too much for TIAA's recordkeeping and administrative services are so speculative that they cannot support any reasonable inference in Plaintiffs' favor.

Plaintiffs argue that their Article III injury is that "'[t]he Plan should have been able to obtain per participant recordkeeping fees of no more than $22 per participant, and likely even less. This fee is consistent with the average recordkeeping fees paid by similar plans in the country[.]'" ECF No. 18 at 5-6 (quoting ECF No. 12 at ¶ 72). However, Plaintiffs' conclusory allegations about their $22 "market price" are wildly speculative and should be disregarded. Plaintiffs have effectively conceded their allegations fail to state a claim under *Singh v. Deloitte LLP*, 123 F.4th 88 (2d. Cir. 2024), and *Boyette v. Montefiore Medical Center*, 2025 WL 48108 (2d Cir. Jan. 8, 2025), which held that a plaintiff challenging a plan's recordkeeping fees must plausibly allege

5

that the challenged fees were excessive relative to the services rendered. Those same allegations also fail to clear the bar under Rule 12(b)(1).

As detailed extensively in Defendants' Motion (ECF No. 16 at 10-12), Plaintiffs concede that they wrongly "assume" that each of their comparator plans pays "$0" (*i.e.*, nothing) in additional indirect compensation on top of the direct compensation paid to their recordkeeping service provider. *Id*. at 12. In fact, Plaintiffs admit that the indirect compensation amounts paid by their comparator plans were *not $0.* ECF No. 12 ¶ 68. Thus, Plaintiffs *admit* that the recordkeeping fees they allege for their comparator plans are wrong and inaccurate.

Plaintiffs attempt to salvage their defective allegations by focusing only on the "direct fees" paid by the Plan and comparator plans. ECF No. 18 at 17-18. They cite *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 182 (3d Cir. 2024) to support their direct fee comparison, but that case does not help them as there the plaintiffs alleged the amounts of both direct and indirect compensation for most of the proposed comparators.[1] *See also Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 363-64 (M.D.N.C. 2022) ("apples-to-oranges" comparison where the plaintiff compared direct and indirect compensation against only direct compensation).

*MacTaggert v. Professional Fiduciary Servs., LLC*, 2025 WL 1726143 (W.D. Wis. June 20, 2025) is instructive. In that case, the court dismissed a prohibited transaction claim for lack of standing because the plaintiff's allegations were not sufficient to show that he suffered an actual injury—only that an ESOP transaction occurred. *Id.* at *6-7. Plaintiffs argue that the plaintiff in

---

[1] Plaintiffs represent that in this case, "[l]ike *Mator*, "the Plan was already paying too much in direct fees, so if the defendants had been monitoring properly, 'they would have realized that it was not necessary to allow [the recordkeeper] to collect additional fees [indirectly] through revenue sharing.'" ECF No. 18 at 18. Plaintiffs take this quote entirely out of context, as the *Mator* court was merely requoting the plaintiffs' allegations in that case – and in the context of the plaintiffs' share class claim. *Mator*, 102 F.4th at 182.

6

*MacTaggert* failed to provide a theory of injury (ECF No. 18 at 16-17)—that is wrong. In *MacTaggert*, the plaintiff alleged that he sustained a "reduced value of his ESOP." 2025 WL 1726143, at *3. However, the court found that while "in some cases, a plaintiff *could* suffer an actual injury despite having an account balance increase in value over time, plaintiff's argument that he is such a plaintiff is based solely on speculation rather than a reasonable inference from the facts actually alleged." *Id.* at *4. So too, here. While a plaintiff *could* establish a theory of injury though allegations that showed a plan overpaid for recordkeeping and administrative services, the Amended Complaint is "based solely on speculation rather than a reasonable inference" from any facts alleged. Here, Plaintiffs *admit* the facts alleged are wrong—*i.e.*, they wrongly assume their comparator plans paid $0 in indirect compensation.[2] ECF No. 12 ¶ 68.

### 3. Plaintiffs' Authority Does Not Help Them.

Plaintiffs cite an assortment of court decisions that they contend supports their claim, but those decisions do not—and cannot—overcome the Amended Complaint's fatal deficiencies.

In *Collins I*, the Second Circuit held that Plaintiffs' statutory standing with respect to a recordkeeping fee claim "did not establish that they also had Article III standing to press their revenue sharing-based imprudence claim" as to investment options in which they did not personally invest. *Collins v. Ne. Grocery*, Inc., 149 F.4th 163, 173 (2d Cir. 2025) (citing *Singh*, 123 F.4th at 93-95 (2d Cir. 2024)). In a companion decision, *Collins II*, the Second Circuit held that the plaintiffs in that case had alleged sufficient facts to support an inference that the plan recordkeepers were compensated through revenue sharing from specific funds in the plan. *Collins*

---

[2] *John v. Whole Foods Market Group Inc.*, 858 F.3d 732 (2d Cir. 2017) is inapposite and involved materially different facts. There, the plaintiff adequately alleged a misrepresentation with respect to the weight and corresponding price of certain food items. *Id.* at 736-37. There is no allegation here that TIAA represented it would charge one amount for its essential recordkeeping and administrative services but actually charged Plaintiffs a different, higher amount.

*v. Ne. Grocery, Inc.*, 2025 WL 2383710, at \*4 (2d Cir. Aug. 18, 2025). Those funds, the plaintiffs had alleged, "were selected because those investments would compensate Fidelity without needing to bill the Plan's administrators for those indirectly-compensated services." *Id.* The Second Circuit summarily vacated the district court's dismissal of the prohibited transaction claim **because** the district court had applied the Second Circuit's pre-*Cunningham* pleading standard. *Id.* at \*5 ("Accordingly, we vacate the judgment as to Count Five for further consideration in light of *Cunningham v. Cornell University*, 145 S. Ct. 1020 (2025)."). The Second Circuit did not rule that the plaintiffs had stated a plausible prohibited transaction claim or established an Article III injury.[3]

*Carlisle* likewise does not support Plaintiffs' claim. In *Carlisle*, the Second Circuit simply reiterated that a prohibited transaction claim is distinct from a duty of loyalty claim. *Carlisle v. Bd. of Trs. of Am. Fed'n of New York State Teamsters Conf. Pension & Ret. Fund*, 2025 WL 3251154, at \*4 n.3 (2d Cir. Nov. 21, 2025). It likewise is distinct from a duty of prudence claim. But this does not change the fact that Plaintiffs must plausibly allege both a prohibited transaction and a cognizable injury-in-fact to assert their claim. None of Plaintiffs' authority salvages their defective claim.[4]

---

[3] To the extent the Second Circuit's opinion could be read to go so far as concluding that the plaintiffs in that case had identified a prohibited transaction, the plaintiffs there asserted an entirely different claim and theory of injury than Plaintiffs do here—namely, that the defendants had selected particular funds for the plan *because* they would share revenue with the plan's recordkeepers without needing to invoice the plan administrators. 2025 WL 2383710, at \*4.

[4] Plaintiffs cite several decisions that considered whether the plaintiffs established Article III standing to challenge investment options in which they did personally not invest—and contrast these with Article III standing to challenge recordkeeping fees. *See* ECF No. 18 at 11-12 (citing cases). These decisions do not help Plaintiffs because they address a different point than the one Defendants are making here. Defendants are not arguing that Plaintiffs lack standing because they did not use the recordkeeping services at issue and therefore could not have suffered injury from those services. Defendants' position is that Plaintiffs lack standing because they have not shown any harm from the "essential" recordkeeping services they allege they used and paid for.

**III.    Plaintiffs Fail To Address Defendants' Section 408(b)(2) Affirmative Defense.**

*Cunningham* also did not affect the long-standing pleading principle that, where an affirmative defense appears on the face of the complaint, a court may consider that affirmative defense. Cases post-dating *Cunningham* have reiterated this well-established standard. *Aetna Life Ins. Co. v. Fast Lab Techs., LLC*, 2025 WL 2463706 at *7 (S.D.N.Y. Aug. 27, 2025); *see also Hill v. Delaware N. Cos. Sportservice, Inc.*, 2012 WL 2405233, at *2 (W.D.N.Y. June 25, 2012) (quoting *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998), *cert denied* 525 U.S. 1103 (1999)). All the facts necessary to establish Defendants' ERISA's Section 408(b)(2) exemption are evident on the face of the Amended Complaint.[5]

*First,* as addressed in Defendants' Motion (at 7-8), Plaintiffs plead that TIAA's recordkeeping services were "essential" to the Plan. ECF No. 12 at ¶¶ 57-59. They also plead that each of their proposed comparator plans received recordkeeping services from a third-party recordkeeper and paid for those services. ECF No. 12 at 17-20, ¶ 68. Thus, the Court may infer that the Plan's recordkeeping services were necessary and essential from the face of the Amended Complaint. Plaintiffs' attempt to backtrack in their brief (*see* ECF No. 18 at 23) by tying the necessary element to the amount of fees fails. *See, e.g.*, *Peeler*, 2026 WL 208630, at *13.

*Second,* as set forth in Defendants' Motion (at 23), Plaintiffs' allegations on the face of the Amended Complaint plainly establish the inference that the Plan's recordkeeping fees were reasonable. As an initial matter, Plaintiffs allege that their self-selected comparator plans paid a wide range of per-participant fees (between $9-$28) for an assortment of services, including

---

[5] 29 U.S.C. § 1108(b)(2) (prohibitions in ERISA Section 406 "shall not apply to" . . . "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.").

9

recordkeeping services. ECF No. 12 at 17-20, ¶ 68. The Amended Complaint clearly pleads, however, that aside from the Thermo Fisher Scientific Inc. 401(k) retirement plan, the Plan received *more* services than any other proposed comparator plans across all years compared. *Id.* (citing Form 5500 Service Codes denoting the specific services each comparator plan and the Plan received). That difference in service levels supports the moderately higher fee that the Plan allegedly paid per participant (between $30-$49). The Plan's alleged fees are within the range of fees supposedly paid by the comparator plans *particularly* accounting for the fact that TIAA provided the Plan with *more services* than the other plans received. *Id.*

That leaves only a single comparator, the Thermo Fisher 401(k) plan, which Plaintiffs claim paid less in direct compensation across the years compared while listing more Form 5500 service codes. However, Plaintiffs plead that plans with more participants can "negotiat[e] a lower per-participant recordkeeping fee" (ECF No. 12 at ¶ 61) and the Thermo Fisher plan consistently had significantly more participants than did the Plan (*id.* ¶ 68). Moreover, as explained above, Plaintiffs admit that Thermo Fisher also paid additional indirect compensation to its recordkeeper not included in the Plaintiffs' fee calculation. For these reasons, it is apparent, on the face of Plaintiffs' Amended Complaint, that Defendants satisfy the requirements of ERISA's Section 408(b)(2) exemption and for that reason, too, the Court should dismiss the Amended Complaint with prejudice.

## CONCLUSION

The Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

Dated: February 2, 2026        **MAYER BROWN LLP**

/s/ *Nancy G. Ross*

Richard E. Nowak (*pro hac vice pending*)     E. Brantley Webb (*pro hac vice*)

10

Nancy G. Ross
MAYER BROWN LLP
71 S. Wacker Dr.
Chicago, IL 60606
Phone: (312) 782-0600
Email:   rnowak@mayerbrown.com
         nross@mayerbrown.com

Jennifer L. Weinberg *(pro hac vice)*
MAYER BROWN LLP
1999 K St. NW
Washington, DC 20006
Phone: (202).263-3000
Email:   bwebb@mayerbrown.com
         jlweinberg@mayerbrown.com

11

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Reply in Support of Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6) Plaintiffs' Amended Complaint was served on Plaintiffs' counsel of record via the Court's ECF system on February 2, 2026.

Dated:  February 2, 2026                                  */s/ Jennifer L. Weinberg*